UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CATHY JO SUTTON, | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 1:17-CV-1-TLS |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**AMENDED OPINION AND ORDER**

Plaintiff Cathy Jo Sutton seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for disability and disability insurance benefits as well as supplemental security income. The Plaintiff argues that the Commissioner wrongfully denied her Social Security benefits and erred by failing to incorporate the limiting effects of all of her impairments into her residual functional capacity, failing to give appropriate weight to the opinions of various treating physicians, and relying on improper considerations when evaluating the Plaintiff's credibility.

**BACKGROUND**

On December 7, 2010, the Plaintiff filed a Title II application for disability and disability insurance benefits as well as a Title XVI application for supplemental security income, alleging disability beginning October 9, 2010. (R. 563.) Her claims were denied initially on February 15, 2011, upon reconsideration on April 19, 2011, and after a hearing before an administrative law judge (ALJ) on May 16, 2012. (*Id.*) After the Appeals Council denied her request for review, the

Plaintiff appealed the decision to the United States District Court for the Northern District of Indiana, which, on September 21, 2015, remanded the claims for further proceedings. (*Id.*) On May 25, 2016, the Plaintiff appeared with counsel and testified at a hearing before the ALJ. (*Id.*) Also appearing were James Haynes M.D., a board certified neurologist who acted as an impartial medical expert, and Robert Barkhaus, Ph.D., an impartial vocational expert (VE). (*Id.*) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied her request for review. (R. 560–62.)

On January 3, 2017, the Plaintiff filed this claim in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has been unable to engage in SGA since her alleged onset date, October 9, 2010. (R. 566.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including a history of chronic abdominal/gastrointestinal pain due to apparent scar tissue/adhesions from prior abdominal surgeries; digestive system problems (including irritable bowel syndrome, gastritis, GERD, hiatal hernia, diverticulosis, fatty infiltrates in the liver, and liver cysts); disorders of the back and neck (including scoliosis, arthropathy, bilateral sacroilitis, degenerative changes in the cervical spine, hemongioma at T10, perineural cysts at the T5-11 neural foramina, and multilevel disc protrusions in the thoracic spine); myofascial pain syndrome, fibromyalgia, mega cisterna magna with headaches, obesity, pain disorder, mood disorder/depression (with and without psychosis), anxiety disorder, and history of cannabis use/dependence. (*Id.*) The ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work. (*Id.*) The ALJ found that the Plaintiff's other alleged impairments, including foot problems, kidney problems, elbow problems/bilateral epicondylitis, urinary tract infections, swollen glands in her neck, sinus problems, atrial enlargement, and tachycardia, were not severe impairments. (*Id.*)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically,

despite her limitations—to determine whether she can perform "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that she had the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a), (lifting, carrying, pushing, and pulling 10 pounds occasionally and less than 10 pounds frequently and, in an eight-hour period, sitting for a total of 6 hours and standing/walking for a total of 2 hours) except:

> [S]he would need a sit/stand option (where she can change positions throughout the eight-hour workday but can pay attention to the task at hand). In addition, the claimant is only occasionally able to climb, balance, stoop, kneel, and crouch. She is also limited to unskilled work, meaning that she is able to understand, remember, and carry out only simple, routine tasks and sustain these tasks throughout the eight-hour workday. She can perform tasks that do not involve other than a flexible work pace or more than brief, routine interactions with others.

(R. 568–69.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled as of her alleged onset date. The ALJ evaluated the objective medical evidence and the Plaintiff's subjective complaints and found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (R. 570.) But, the ALJ found that the Plaintiff's, and the Plaintiff's daughter's, testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (R. 571.) The Plaintiff testified that she had a limited ability to lift and carry due to pain in her back and abdomen, that she had to rest for the remainder of the day after only 30–60 minutes of activity, that she needed to readjust her position every 10–15 minutes, and that she stayed in bed 12–16 days per month. (R. 569.) She

also stated that she had trouble managing her checkbook due to mental impairments and that she had difficulty squatting, bending, reaching, kneeling, and climbing stairs. (*Id.*) The Plaintiff's daughter stated that the Plaintiff spent a lot of time in bed, that she was in pain, that she experienced nausea, that she had difficulty sleeping, that she required many breaks while doing household chores, and that she had difficulty handling stress, getting along with authority figures, concentrating, and finishing tasks. (R. 569–70.) However, the ALJ noted that the Plaintiff had a sporadic work history, undermining her credibility, and was "able to engage in at least a somewhat full range of activities," including maintaining a long-term relationship, handling her own personal grooming, taking medications without reminders, surfing the internet, cooking, light gardening, doing laundry, driving, going out alone, shopping for groceries, paying bills, counting change, reading for pleasure, watching television, working on scrapbooks, using a phone, feeding her dog, going to church and book club meetings, and occasionally babysitting her grandchildren for short periods of time. (R. 571.) The ALJ also noted that the Plaintiff had "several inconsistent urine drug screens (sometimes even testing positive for THC metabolites) . . . which suggest[ed] that she [was] not following treatment recommendations as prescribed," undermining her credibility. (R. 571–72.)

       The ALJ also looked to the objective medical evidence. The ALJ noted that the Plaintiff had not undergone any surgeries to her abdomen, GI tract, spine, brain, or skull surgery since her alleged onset date. (R. 571.) The ALJ also noted that the Plaintiff had not sought emergency room treatment for her headaches since her alleged onset date, and her outpatient treatment from mental health providers had been "quite sporadic in nature." (*Id.*) Moreover, the ALJ found that both the Plaintiff's physical and mental examination findings were "largely within normal limits since the alleged onset date." (R. 572.)

The Plaintiff has past relevant work as a delivery driver (unskilled, medium work), census clerk (semi-skilled, sedentary work), secretary (semi-skilled, sedentary work), and intake coordinator (skilled, sedentary work). (*Id.*) Accordingly, the ALJ found that the Plaintiff was unable to perform her past relevant work. (*Id.*) Relying on the VE's testimony, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 574.) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act as of her alleged onset date. (R. 575.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment

for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 308. A court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

**A.    Combination of Impairments**

The Plaintiff argues that the ALJ erred by failing to consider the combined effects of all of her impairments, including her non-severe impairments, in determining her RFC. When an ALJ determines that one or more of a claimant's impairments are "severe," "the ALJ need[s] to consider the *aggregate* effect of this entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th

Cir. 2003) (emphasis in original). "The fact that [an impairment] standing alone is not disabling is not grounds for the ALJ to ignore [it] entirely—it is [its] impact in combination with [the claimant's] other impairments that may be critical to his claim." *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014). That is, "a competent evaluation of [a claimant's] application depends on the total effect of all his medical problems." *Golembiewski*, 322 F.3d at 918; *see also Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) ("As we—and other circuits—have emphasized repeatedly . . . the *combined* effects of the applicant's impairments must be considered, including impairments that considered one by one are not disabling.").

"A failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted); *see also Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010) (finding that "failure to consider the cumulative effect of impairments not totally disabling in themselves was an elementary error"); *Terry*, 580 F.3d at 477 (noting that even where impairments would "not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether"); *Verlee v. Astrue*, No. 1:12-CV-45, 2013 WL 1760810, at *5 (N.D. Ind. Apr. 24, 2013) (remanding where "ALJ failed to discuss, and effectively ignored, the Plaintiff's" non-severe impairments when determining the Plaintiff's RFC).

At step two of the ALJ's analysis, the ALJ noted several non-severe impairments, including the Plaintiff's foot problems, kidney problems, elbow problems/bilateral epicondylitis, urinary tract infections, swollen glands in her neck, sinus problem, atrial enlargement, and tachycardia. (R. 566.) The Plaintiff argues that the ALJ did not consider all of her medically determinable impairments in determining her RFC. Specifically, the Plaintiff argues that the ALJ did not include any restrictions related to her upper extremities despite finding that her elbow

8

problems constituted a non-severe impairment.[1] After determining that the Plaintiff's elbow problems were non-severe, the ALJ did not mention the impairment again. Nor does the Court find any further mention of any of the other impairments that the ALJ found to be non-severe. This is error. "Although the non-severe impairments may not have an effect on the claimant's RFC ultimately, the ALJ [is] required to explain why." *Denton*, 596 F.3d at 423. The Seventh Circuit has repeatedly emphasized that ALJs must "sufficiently articulate their assessment of the evidence to assure us that they considered the important evidence." *Scott v. Barnhart*, 297 F.3d 589, 585 (7th Cir. 2002). And "[a]n ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ properly considered the evidence." *Boyer v. Comm'r of Soc. Sec.*, No. 4:13-CV-45, 2014 WL 4639512, at *5 (N.D. Ind. Sept. 16, 2014) (internal citations omitted). The Court does not find that the ALJ's decision builds a logical bridge between her findings regarding the Plaintiff's non-severe impairments and the limitations in the Plaintiff's RFC. Thus, to the extent that the ALJ failed to fully consider the Plaintiff's impairments in combination in determining the Plaintiff's RFC, the Court must remand this case.

---

[1] The Plaintiff also seems to argue that her elbow problems should have been considered a severe impairment because the ALJ mistakenly found that the condition could not be expected to last for twelve months when there was evidence of record of complaints regarding her elbows that spanned more than a year. The Commissioner argues that the ALJ properly found that the condition was not severe because the Plaintiff's treatment had not been expected to last for more than twelve months and that medical exams on the relevant dates did not indicate that she had any physical limitations related to the use of her arms. The Court will not address this argument because regardless of whether the condition was severe, the ALJ was required to consider it in the RFC analysis. On remand, the ALJ is encouraged to re-visit whether this condition is severe.

**B.     Credibility**

The Plaintiff makes several assignments of error as to the ALJ's credibility determination. First, she argues that the ALJ improperly weighed her work history against her when, at worst, it should have been considered a neutral factor. Next, she argues that the ALJ placed too much weight on the Plaintiff's daily living activities without evaluating the extent to which the Plaintiff required assistance to perform them. Finally, the Plaintiff asserts that the ALJ improperly held the Plaintiff's failure to fully comply with treatment plans and her use of marijuana against her.

The Court may not overturn the ALJ's credibility determination unless it is "patently wrong." *see Elder*, 529 F.3d at 413–14. "An ALJ is in the best position to determine the credibility of witnesses, and a credibility determination will be overturned only if it is patently wrong." *Pinder v. Astrue*, No. 3:09-CV-363, 2010 WL 2243248, at *4 (N.D. Ind. June 1, 2010) (*citing Craft*, 539 F.3d at 678). "Reviewing courts therefore should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). However, "a failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015) (citing *Terry*, 580 F.3d at 477); *Brindisi v. Barnhart*, 315 F.3d 783, 787–88 (7th Cir. 2003); *Salaiz v. Colvin*, 202 F. Supp. 3d 887, 893 (N.D. Ind. 2016). "The determination of credibility must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft*, 539 F.3d at 678.

*1.     Failure to Comply with Treatment Plans*

First, the Court "cannot assess the validity of the ALJ's credibility determination because the ALJ did not ask important questions to determine if" the Plaintiff's failure to obtain medical care was "justifiable." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014).

"Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *see also Craft*, 539 F.3d at 679 ("The ALJ must not draw any inferences about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care."). This is so because "[t]here may be a reasonable explanation behind [the plaintiff's] actions, such as she may not have been able to afford the treatment, further treatment would have been ineffective, or the treatment created intolerable side effects." *Murphy*, 759 F.3d at 816; *see also Shauger*, 675 F.3d at 696 (finding that "good reasons" for failing to obtain treatment "may include an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects"). "[F]ailure to comply with treatment may be a sign of mental disorder rather than a reason to discount its severity." *Fields v. Berryhill*, No. 2:16-CV-24, 2017 WL 1075120, at *3 (N.D. Ind. Mar. 21, 2017).

If an ALJ takes into consideration a claimant's failure to seek treatment in a credibility determination, the ALJ is required to inquire as to the reasons for such failure. *See Murphy*, 759 F.3d at 816 (finding fault where "the ALJ did not ask [the plaintiff] why she did not attend all of her physical therapy sessions, or why she did not comply with her home exercise program"); *Epting v. Colvin*, No. 2:18-CV-385, 2016 WL 1237888, at *8 (N.D. Ind. Mar. 29, 2016) ("When considering noncompliance with treatment . . . an ALJ is also required [to] make a determination

about whether noncompliance with treatment is justified . . . ."); *Pitaroski v. Colvin*, No. 213-CV-112, 2014 WL 3687234, at *12 (N.D. Ind. July 24, 2014) (remanding because "the ALJ did not make the requisite inquiry to discover the reasons [the plaintiff] either failed to seek treatment . . . or to take his medications as prescribed"). An ALJ may not infer that a claimant "must have felt fine" during gaps in treatment without asking why the claimant received no treatment during those gaps. *Cole v. Colvin*, 831 F.3d 411, 415 (7th Cir. 2016).

An ALJ also cannot draw a negative inference based on a claimant's failure to obtain *adequate* treatment, even if she has sought some treatment during the relevant time period. *See Visinaiz v. Berryhill*, 243 F. Supp. 3d 1008, 1014 (N.D. Ind. 2017) (remanding where "the ALJ did not ask the claimant about her perceived failure to seek adequate treatment" when the claimant's only treatment was through medication that provided "some benefit"); *Parker v. Colvin*, No. 2:15-CV-316, 2016 WL 4435622, at *5 (N.D. Ind. Aug. 22, 2016) (remanding where "[t]he ALJ found Plaintiff less than credible in part because she did not attend as many physical therapy appointments as authorized by her insurance and was not participating in pain management or the types of pain medication the ALJ thought would be appropriate" without "ask[ing] Plaintiff about her physical therapy appointments or pain medication regime[n], and did not credit the pain medications Plaintiff did take").

Although the ALJ faults the Plaintiff for her sporadic treatment and failure to follow treatment plans, there is no indication that the ALJ inquired into these apparent failings. Particularly troubling is that the ALJ faulted the Plaintiff for failing to undergo surgery on her brain, skull, abdomen, GI tract, or spine after her alleged onset date to demonstrate the debilitating nature of her impairments without making this inquiry. *See State v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016) (finding error where adverse credibility determination was based in

part on the plaintiff's "decision not to undergo invasive and expensive surgery, without inquiring into her reasons for doing so"); *Eakin v. Astrue*, 432 F. App'x 607, 613 (7th Cir. 2011) (finding that the plaintiff's "decision to 'live with' the pain rather than undergo surgery was neither an admission that she could obtain gainful employment nor a proper basis for discrediting her testimony" without analyzing the plaintiff's other pain management efforts). There are many reasons a person may choose to forgo surgery even where surgery has the potential to alleviate her impairments more effectively than other treatment methods. Thus, to the extent the ALJ made an adverse credibility determination based on the Plaintiff's failure to obtain treatment or follow through on all of her treatment plans, the Court must remand this case.

The Court is also troubled by the ALJ's reference to the Plaintiff's use of marijuana. It is not clear to the Court whether the ALJ weighed the use of marijuana against the Plaintiff's credibility or whether the ALJ's consideration pertained, and was limited, to some other purpose. To the extent that the ALJ made an adverse credibility determination based on the Plaintiff's use of marijuana, the ALJ erred because she did not build a logical bridge between use of marijuana and the Plaintiff's credibility. *See Hensley v. Berryhill*, No. 2:16-cv-320, 2017 WL 4161558, at *5 (N.D. Ind. Sept. 20, 2017) ("But the ALJ did not explain how th[e] statement[] that [the plaintiff tried marijuana] made Plaintiff's testimony about her pain and physical limitations less believable."); *Badger v. Astrue*, No. 1:11-cv-778, 2012 WL 1801871, at *5 (S.D. Ind. May 15, 2012) ("While this Court recognizes that marijuana consumption is an illegal activity, that fact alone cannot be used as a basis for discounting a claimant's credibility with regard to her subjective complaints about pain."); *Elmore v. Astrue*, No. 08-2221, 2009 WL 4931681, at *5 (C.D. Ill. Dec. 15, 2009) (finding that, "[i]n the absence of any explanation, the past use of marijuana is "an improper basis for a credibility assessment"); *Lawson v. Astrue*, No. 06-4136,

2007 WL 3026648, at *8 (D. Kan. Sept. 27, 2007) ("The relevance of the ALJ's reference to plaintiff's marijuana use is not well-explained . . . . [i]f [the ALJ] believes that people who smoke marijuana do not make credible claims of disability, then he should have said so and supported that position."). Thus, if the ALJ believes that the Plaintiff's use of marijuana adversely affects her credibility, the ALJ must explain why.

### 2. *Daily Living Activities*

The Plaintiff also argues that the ALJ placed undue weight on her ability to conduct daily living activities. The Seventh Circuit has emphasized that there are "critical differences between activities of daily living and activities in a full-time job" including flexibility in scheduling, possible help from family members, and lack of minimum performance standards; and "[t]he failure to recognize these differences is a recurrent . . . feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

In this case, the ALJ failed to consider the modifications and assistance that the Plaintiff required to complete the referenced daily activities. For example, the Plaintiff reported that her son would go to the store for her or that she would go to Walgreens instead of Walmart because Walgreens was smaller. (R. 1445.) She testified that her boyfriend, before he passed away, helped with household chores. (R. 141.)  She testified that it takes her longer to cook some dinners because she must keep stopping and alternate between tasks that she can do sitting down or standing up. (R. 147.) Thus, the ALJ "ignored [the Plaintiff's] qualifications as to *how* [she] carried out those activities." *Craft*, 539 F.3d at 660 (emphasis in original). Moreover, many of the daily activities the ALJ referenced resulted in a "recovery period" often lasting for the remainder of the day or extending across multiple days. Courts have repeatedly found fault with

decisions where the ALJ noted that the claimant could perform daily activities but failed to examine the physical or mental consequences of performing those activities and the claimant's need for assistance or modifications. *See, e.g.*, *Sneed v. Berryhill*, No. 2:16-CV-195, 2017 WL 4325303, at *3 (N.D. Ind. Sept. 29, 2017) ("If the ALJ wishes to hold Plaintiff's daily activities against her, he must . . . discredit Plaintiff's claims of how much her children help with the activities."); *Herrold v. Colvin*, No. 2:13-CV-360, 2015 WL 1243293, at *6 (N.D. Ind. Mar. 17, 2015) ("[T]he Seventh Circuit has repeatedly criticized credibility determinations that are based on a plaintiff's ability to take care of his personal hygiene, children, or household chores.") (citing *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248–249 (6th Cir. 2007) (finding fault where the ALJ "fail[ed] to examine the physical effects coextensive with [the] performance" of daily activities and "failed to note or comment upon the fact that [the claimant] receive[d] assistance of many everyday activities and even personal care from her children").

To the extent that the ALJ based her credibility determination on the Plaintiff's ability to engage in daily living activities without taking into account the qualifications on the Plaintiff's ability to perform them, the Court must remand this case.

## CONCLUSION

Accordingly, the Court REVERSES and REMANDS this case. Because the Court is remanding on these issues, it need not consider the remainder of the parties' arguments.

SO ORDERED on May 4, 2018.

    s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT